IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION



| | | |
|---|---|---|
| (1) TRINITY MOTHER FRANCES HEALTH SYSTEM and (2) MOTHER FRANCES HOSPITAL, Plaintiffs | § § § § § | |
| v. | § § | CIVIL ACTION NO. 2-03CV-464 DF |
| (1) EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM and (2) EAST TEXAS MEDICAL CENTER Defendants | § § § § § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Trinity Mother Frances Health System ("TMFHS") and Mother Frances Hospital ("MFH") file this original complaint against East Texas Medical Center Regional Healthcare System ("ETMCRHS") and East Texas Medical Center ("ETMC") and show the following:

### PARTIES

1. Plaintiffs are non-profit healthcare systems organized under the laws of the State of Texas and doing business in this district. Defendants are non-profit healthcare systems organized under the laws of the State of Texas and doing business in this district, having a principal place of business at 1000 S. Beckham Ave, Tyler, Texas 75701.

### JURISDICTION AND VENUE

2. This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.* This court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121 and under 28 U.S.C. §§1331, 1338, and 1367. The Plaintiffs' federal and state law claims stem from Defendants' improper and illegal

attempts to divert business from Plaintiffs through the dissemination of false and inaccurate information to the consuming public regarding its services, as detailed herein. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial portion of the events giving rise to these claims occurred in the Eastern District of Texas. Personal jurisdiction exists because Defendants have committed and continue to commit these acts in the State of Texas and in the Eastern District of Texas.

## FACTS

3. Plaintiffs are non-profit healthcare systems doing business in the Eastern District of Texas. Defendants are non-profit healthcare systems doing business in the Eastern District of Texas. Both systems conduct business throughout the district, operating numerous hospitals and out-patient facilities in the area. Plaintiffs and Defendants offer many of the same medical services to patients in the surrounding communities and, as such, are often in competition. A major component of both of their strategies involves the utilization of the managed care system and the acquisition of various contracts to be the sole in-network provider for various commercial beneficiaries. Both engage in extensive advertising of their respective accomplishments and accolades.

### Advertising

4. Defendants have engaged, and continue to engage, in a concerted effort to improperly and illegally divert business from Plaintiffs through the dissemination of false and inaccurate information to the consuming public regarding its services. Specifically, Defendants launched an advertising campaign utilizing various media formats, including radio, television and print, wherein Defendants claimed to be the only vascular laboratory accredited for carotid, arterial and venous testing by the ICAVI in the area. This representation was false. Plaintiffs hold the same certifications.

2

Defendants' representation was misleading and/or false, and was likely to cause confusion to the public and lead patients to the false conclusion that Defendants offered a superior service in their vascular laboratories.

5. Defendants have further engaged, and continue to engage, in a concerted effort to improperly and illegally divert business from Plaintiffs through the dissemination of false and inaccurate information to the consuming public regarding its pediatric services. Defendants have launched an advertising campaign regarding their three new pediatricians, wrongfully claiming that all the physicians in the new pediatric group are "board certified" when all are not. Defendants' representation was misleading and/or false, and was likely to cause confusion to the public and lead patients to the false conclusion that Defendants offered a level of service different than what is actually available at Defendants. All of this conduct was done to the detriment of Plaintiffs.

**Unlawful Waiver/Discounting of Co-Pay**

6. Over the past several years, Defendants have engaged in a course of conduct wherein they advised patients, employers and directors of those holding group plans, and physicians that Defendants' status as an out-of-network provider was of no legal or financial consequence, and that Defendants would "discount" the amount of commercial co-payments and/or deductible due from the out-of-network patients. The "discount" offered by Defendants ranged from the waiver of the entire out-of-network co-pay to a reduction to the in-network rate. This practice was designed to convince those patients belonging to plans within the Plaintiffs' network that the fact that their plan designated Plaintiffs as the in-network provider was of no legal or financial consequence and that the patient could receive treatment from Defendants at the same rate as from an in-network provider or even at a reduced cost. This practice results in an increase of costs to those members of the plan

who remain in-network. Additionally, this has resulted in a significant decrease in the use of Plaintiffs by in-network patients. Plaintiffs negotiated for contracts with these particular insurance groups and companies agreeing to offer services at a discounted rate in exchange for a particular volume of beneficiaries in the network. When Defendants waive the co-pay and entice out-of-network patients to receive treatment from Defendants, Plaintiffs are harmed by a reduction of the number of in-network patients seen at Plaintiffs' facilities and loss of reimbursement for treatment of those patients. As a result, Plaintiffs have suffered significant monetary damages. Additionally, Defendants mislead the patients into believing that the status of an in-network provider is legally and financially irrelevant to their medical care. Defendants' misleading and deceptive scheme discourages patients from using health care services responsibly by removing the legitimate economic obligations arising under negotiated in-network arrangements. This conduct by Defendants threatens the entire system which has been implemented to offer patients affordable medical treatment.

7. Defendants' conduct constitutes an illegal solicitation of patients in violation of section 102.001 of the Texas Occupation Code and section 38.12 of the Texas Penal Code, which prohibit a person from knowingly offering to pay or agreeing to accept any remuneration in cash or kind to or from another for securing or soliciting a patient or patronage. Additionally, this conduct violates 42 U.S.C. § 1320a-7b(b) which also prohibits the solicitation of patients.

**Misleading Staff Physicians that Discounting/Waiver of Co-Pay was Proper**

8. Upon information and belief, Defendants use their relationships with area physicians to further divert patients away from Plaintiffs by advising said physicians of Defendants' policy of routinely waiving/discounting co-pays and that the status of an in-network provider is legally and

financially irrelevant to a patient's medical care. Upon information and belief, physicians are induced by Defendants to divert patients away from Plaintiffs by advising their patients that the status of Plaintiffs as the "preferred provider" under their managed care contract is legally and financially irrelevant, that Defendants have a policy of waiving the patient's co-pay, and that in the end, it will be cheaper for the patient on a individualized basis to have a procedure performed at Defendants rather then pursuant to the managed care contract at Plaintiffs. Defendants' misleading and deceptive scheme discourages patients from using health care services responsibly by removing the legitimate economic obligations arising under negotiated in-network arrangements. This conduct by Defendants threatens the entire system which has been implemented to offer patients affordable medical treatment. This conduct further causes Plaintiffs considerable damages in both lost patient revenue (from the patients who are diverted away from Plaintiffs to Defendants) and in lost revenue from the patients who are treated at Plaintiffs pursuant to a managed care contract, whose services are rendered at an artificially reduced contract rate which was agreed to by Plaintiffs in consideration for the anticipated volume of patients that are no longer being realized due to Defendants' wrongful and illegal actions.

**Deceptive and Misleading Use of Exclusive Ambulance Service**

9. Defendants have an exclusive arrangement with the City of Tyler and Smith County, Texas for the provision of ambulance services in that geographical area. On or about July 20, 2002, Defendants used their exclusive ambulance service arrangement to mislead "Ambulance Patient A" as follows. Ambulance Patient A was involved in a motor vehicle accident within Defendants' exclusive ambulance service area. A Defendants' ambulance arrived at the accident site. Ambulance Patient A, who is the son of an employee within the Trinity Mother Frances Health

System, specifically told the Defendants' paramedic that he, Ambulance Patient A, desired to be transported to Plaintiffs' affiliate, TMF, because Ambulance Patient A's mother was employed at Plaintiffs. Defendants' paramedic falsely represented to Ambulance Patient A that TMF was "not capable" or unable to treat Ambulance Patient A's condition. This representation was false and misleading and was made for the purpose of diverting patients away from Plaintiffs. Upon information and belief, Plaintiffs assert that Defendants routinely utilize such misrepresentations in a concerted effort to mislead the public and divert patients from Plaintiffs to Defendants, all to the detriment of Plaintiffs.

10. As a further example of such misleading statements, during the weekend of December 6, 2003, Defendants again used their exclusive ambulance service arrangement to mislead Ambulance Patient B as follows. Ambulance Patient B, an established patient of Plaintiffs' affiliate, Trinity Clinic, began experiencing chest pains and shortness of breath. Ambulance Patient B or someone on her behalf contacted 911. Defendants responded to the call. Ambulance Patient B specifically and repeatedly requested that she be transported to Plaintiffs' affiliate, TMF. Defendants' paramedics again falsely represented to Ambulance Patient B that they could not transport Ambulance Patient B to Plaintiffs and/or that Plaintiffs could not provide the needed cardiac services. This representation was false and misleading and was made for the purpose of diverting patients away from Plaintiffs. Upon information and belief, Plaintiffs assert that Defendants routinely utilize such misrepresentations in a concerted effort to mislead the public and divert patients from Plaintiffs to Defendants, all to the detriment of Plaintiffs.

## COUNT 1 - LANHAM ACT

11. Defendants' concerted dissemination of false and inaccurate information to the consuming

public regarding its services violates 15 U.S.C. § 1125(a). Specifically, Defendants have claimed that their laboratories are the only vascular laboratories accredited for carotid, arterial and venous testing by the ICAVI in the area. It further claims that its pediatric physicians are board certified when they are not. These claims are false and are likely to cause confusion or mistake and/or likely to deceive the public as to the quality of services at Plaintiffs. As a result, Plaintiffs believe that they have suffered and are likely to continue to suffer damages by this act.

12. As part of its concerted conduct, Defendants have engaged, and continue to engage, in the practice of publishing false or misleading information in an effort to deceive patients and providers into utilizing Defendants as though it was an in-network provider, rather than use Plaintiffs. As part of this pattern of conduct, Defendants have advised the public that Defendants' status as an out-of-network carrier for certain insurance and group plans is of no legal or financial consequence and that a patient can receive treatment at Defendants without any consideration of its network status. Defendants accomplish this by waiving or reducing the co-pay required by an out-of-network commercial carrier. Defendants further accomplish this by inducing area physicians to divert patients to Defendants in consideration of waiving or reducing the co-pay required by an out-of-network carrier for their patients. These practices violate 15 U.S.C. § 1125(a) as they are likely to cause confusion or mistake, and/or likely to deceive those needing medical care regarding Defendants' services. Plaintiffs believe that they have suffered significant damages by these actions and are likely to continue to suffer damages in the future.

13. As further part of this concerted effort, Defendants, through its deceptive and misleading use of their exclusive ambulance service arrangement with local governments, have diverted patients away from Plaintiffs to Defendants, despite the patients' specific requests to be sent to Plaintiffs.

These misrepresentations are examples of a concerted effort to divert patients away from Plaintiffs to Defendants and are likely to cause confusion or mistake, and/or likely to deceive those needing medical care regarding Defendants' services. Plaintiffs believe that they have suffered significant damages by these actions and are likely to continue to suffer damages in the future.

### COUNT 2 - TORTIOUS INTERFERENCE WITH CONTRACT

14. Plaintiffs have entered into numerous contracts with various companies, groups and commercial health insurance carriers to be designated as the sole in-network provider under their plans. The designation as a sole in-network provider is intended to insure those patients covered by these plans the delivery of service by Plaintiffs at a substantially reduced and affordable rate to the patients and groups. These preferred provider contracts are also designed to insure Plaintiffs a certain volume of patients, namely the vast majority of those insured under the particular plans.

15. Defendants' willful and wanton acts of interference with those insured under these contracts has injured Plaintiffs by reducing the volume of patients that should have been treated at Plaintiffs under these contracts, and thereby reducing Plaintiffs' income anticipated for the treatment of in-network patients. In so doing, Defendants have willfully and intentionally interfered with Plaintiffs' contracts and such willful and intentional actions on the part of Defendants has proximately caused damage to the extent that significant actual damages and losses have been incurred.

### COUNT 3 – UNFAIR COMPETITION

16. Defendants' acts of disseminating misleading information concerning their services and waiver of insurance co-pays for out-of-network patients constitutes unfair competition under Texas

common law. As a proximate result of Defendants' actions, Plaintiffs have sustained damages of an amount to be proven at trial.

## DAMAGES

17. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered significant damages, including loss of patients and income projected to be derived by the treatment of patients within the preferred provider networks contracted for, whether by Defendants directly or through physicians induced by Defendants to divert patients. Additionally, Plaintiffs have suffered loss of income as a result from patients being unlawfully diverted from using Plaintiffs' laboratories to Defendants' laboratories as a result of the misleading and deceptive advertisements claiming that Defendants' laboratories are the only ones holding certain accreditations. Additionally, Plaintiffs have suffered damages as a result of Defendants diverting patients through their ambulance service as described herein. Additionally, Plaintiffs believe that they have suffered and may continue to suffer damage to its reputation.

## INJUNCTIVE RELIEF

18. Defendants' actions are causing, and will continue to cause, substantial competitive injury and irreparable harm for which Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to preliminary and permanent injunctive relief restraining Defendants from continuing its unlawful and tortious conduct which forms the basis of this action.

## ADDITIONAL DAMAGES UNDER SECTION 1117

19. Under 15 U.S.C. § 1117, in assessing damages, this court may enter judgment according to the circumstances of each case for any sum above the amount found as actual damages not exceeding three times such amount. Additionally, this court has the discretion to enter judgment for such sum

as the court shall find to be just according to the circumstances of the case. The sum awarded by the court is intended to constitute compensation and not act as a penalty. Plaintiffs ask this court to award Plaintiffs additional damages as compensation pursuant to this section of the Act.

## PUNITIVE DAMAGES

20. Additionally, Plaintiffs request an award of punitive damages under its claim for tortious interference with a contract. The conduct of Defendants was knowingly and intentionally or willfully committed. Additionally, the nature of the wrong, character of the conduct involved, degree of culpability of the wrongdoer, situation and sensibilities of the parties, and extent to which the conduct offends the public's sense of justice and propriety justifies an award of punitive damages in this instance.

## ATTORNEY'S FEES

21. Plaintiffs are entitled to an award of attorney's fees under 15 U.S.C. § 1117(a) because this case presents the exceptional case in which attorney's fees are justified.

## PRAYER FOR RELIEF

22. For these reasons, Plaintiffs ask for judgment against Defendants for the following:

(a) that Plaintiffs recover any and all actual damages it has sustained as a result of Defendants' unfair competition, as well as a result of Defendants' tortious interference with the contract;

(b) that Plaintiffs be awarded additional damages under 15 U.S.C. § 1117(a) as determined by this court;

(c) that Plaintiffs be awarded punitive damages for Defendants willful and knowing tortious interference with its contracts;

(d) that the court declare this case an exceptional case and award Plaintiffs reasonable attorney's fees for prosecuting this action under 15 U.S.C. § 1117(a);

(e) that the court enter judgment that Defendants, their officers, agents, servants, employees, attorneys and all persons in active concert or participation with any of them be preliminarily and permanently enjoined from disseminating information in connection with its services, billing and collection practices, advertising and promotional activities that in any way confuses or misleads the public into believing that Defendants offer exclusive services and hold exclusive accreditations when in fact those representations are not accurate, or that their physicians hold board certifications when they do not, and additionally, enjoining those same parties from competing unfairly with Plaintiffs in any manner, including, without limitation, unlawfully representing that the network status of either hospital is not legally or financially relevant to the availability of treatment of the patient or to the provider, resulting in confusion to patients regarding the true in-network's status, discounting or waiving insurance co-payments for out-of-network patients, from using Defendants' exclusive ambulance service to divert patients (who wish to use Plaintiffs' cardiac, trauma, or other medical services) by use of Defendants' false and misleading comments about Plaintiffs' inability to provide such care, and in conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in the injunction.

(f) Plaintiffs request any and all additional relief to which it may be entitled under law or equity as this court deems appropriate.

Respectfully submitted,

BY: _____
Otis Carroll
State Bar No. 03895700
Collin Maloney
State Bar No. 00794219
J. Wesley Hill
State Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Telephone:(903) 561-1600
Facsimile: (903) 581-1071

Franklin Jones Jr.
State Bar No. 00000055
JONES AND JONES, INC., P.C.
201 West Houston Street
P.O. Drawer 1249
Marshall, TX 75671-1249
Telephone:    (903) 938-4395
Facsimile:    (903) 938-3360

S. Calvin Capshaw
State Bar No. 03783900
BROWN McCARROLL LLP
1127 Judson Road, Suite 220,
P.O. Box 3999
Longview, Texas 75601-5157
Telephone:    (903) 236-9800
Facsimile:    (903) 236-8787

ATTORNEYS FOR PLAINTIFFS